UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| MECCA & SONS TRUCKING CORP., | |
| Plaintiff, | **Civil Action No. 14-7915 (SRC)(CLW)** |
| v. | **OPINION** |
| WHITE ARROW, LLC; TRADER JOE'S COMPANY, INC.; ABC CORPORATIONS 1-5 (said names being fictitious); and JOHN DOES 6-10 (said names being fictitious), | |
| Defendants. | |

**CHESLER**, District Judge

Plaintiff Mecca & Sons Trucking Corp. ("Plaintiff") brings this action against Defendant White Arrow, LLC, ("Defendant") for damages arising out of a shipment of cheese from New Jersey to California in 2014. Plaintiff asserts a statutory claim under the Carmack Amendment, 49 U.S.C. § 14796, and state common law claims for negligence and indemnification. (ECF No. 15.) By order dated September 16, 2016, this Court granted Plaintiff partial summary judgment on the issue of liability with respect to its Carmack Amendment claim. (Id.) In that order, the Court also granted summary judgment in favor of Defendant as to Plaintiff's state law claims, reasoning that those claims were preempted by the Carmack Amendment. (ECF No. 16.)

Now before the Court is Plaintiff's motion for partial summary judgment, on the issue of damages, for the Carmack Amendment claim. (ECF No. 68.) Defendant opposes the motion. (ECF No. 70.) The Court has reviewed the parties' submissions and proceeds to rule without

oral argument. See Fed. R. Civ. P. 78(b). For the reasons stated below, Plaintiff's motion will be granted.

I. BACKGROUND

The facts of this case are set forth in detail in the Court's September 16, 2016, opinion, which is incorporated by reference and with which familiarity is presumed. In June 2014, Singletons Dairy, LLC, ("Singletons") hired Plaintiff to transport seventeen pallets of cheese from a warehouse in Bayonne, New Jersey to a distribution facility of Trader Joe's Company, Inc., ("Trader Joe's") Singleton's purchaser, in Fontana, California. (ECF No. 68-1, Plaintiff Mecca & Sons Trucking Corp. Memorandum of Law in Support of Motion for Summary Judgment on Damages and Entry of Final Judgment ("Mov. Br."), Plaintiff's Statement of Material Facts ("SUMF"), ¶¶ 3, 5.) Plaintiff or an affiliate company, Accem Warehouse, Inc., ("Accem") issued bills of lading for the cheese. (ECF No. 68-1, Exhibit E, Bill of Lading No. S27661; Exhibit F, Bill of Lading No. 28113; Exhibit G, Bill of Lading No. S28116.) Subsequently, Plaintiff subcontracted the delivery job to Defendant. (SUMF ¶¶ 4-7.) Plaintiff's agreement with Defendant included the provision that the cheese be "chilled [to] 40 degrees" Fahrenheit. (ECF No. 68-1, Exhibit D, Email from Angelina Ortiz to Alex Mecca, sent on June 17, 2014 at 10:56 am.)

The cheese was transported over seven days in late June 2014. When it arrived at the Trader Joe's facility in California, Trader Joe's representatives discovered that eight of the cheese pallets had registered temperatures of over 40 degrees during the trip.[1] (SUMF ¶¶ 8-9.) Pursuant to the agreement between Trader Joe's and Singletons, the former was entitled to reject any portion of the cheese that exceeded 40 degrees during transit. Trader Joe's promptly rejected

---

[1] Three temperature reading devices had been placed with the cargo, and each device took approximately 875 readings, or one every ten minutes. Out of the 2,679 readings taken by all three devices, 2,673 exceeded 40 degrees. The devices registered temperatures of over sixty and seventy degrees several times during the trip.

2

the eight pallets, writing "rejected due to warm temp" on the bills of lading representing them. (SUMF ¶ 8; Exhibit E, Bill of Lading No. S27661; Exhibit F, Bill of Lading No. 28113; Exhibit G, Bill of Lading No. S28116.)

Thereafter, the rejected cheese was transported to a warehouse operated by U.S. Growers Cold Storage, Inc., ("U.S. Growers") in Vernon, California. (SUMF ¶ 13; Exhibit J, Invoice for Freight Services Rendered; Exhibit M, Affidavit of Michael Mecca ("Mecca Aff."), ¶¶ 5, 8.) In early August 2014, the cheese was transported back to Bayonne, New Jersey. (SUMF ¶ 14; Exhibit K, Invoice of Delta Freight Logistics Inc.; Mecca Aff., at ¶ 6.) The motion record does not indicate what happened to the cheese after it returned to New Jersey. Plaintiff's reference to costs that it incurred for "destruction" of the cheese (Mov. Br., at 9-10) suggests that the cheese was destroyed.

Subsequently, in September 2014, Singletons sent a letter to Plaintiff stating that it would hold Plaintiff "responsible for the loss of the . . . POs [purchase orders]" associated with the eight rejected cheese pallets. (SUMF ¶ 10; Exhibit H, Letter from Kevin Pedersen to Mecca Trucking, dated September 17, 2014, at 2) In that letter, Singletons stated that its losses were, at minimum, $81,881.73. (Id.) Approximately one month later, in October 2014, Plaintiff transferred $73,581.16 to Singletons as "[p]ayment in full for [the] Fontana Rejection." (SUMF ¶ 12; Mecca Aff., ¶ 4; Exhibit I at 1, Wire Transfer Review.) This amount represented the invoice price of the rejected cheese, plus import duties and processing fees imposed by Plaintiff and Accem (Exhibit I at 3, Accounting Table.) In addition to this payment, Plaintiff subsequently paid $500 for transport of the cheese from the Trader Joe's facility to the cold storage warehouse (SUMF ¶ 13; Mecca Aff., ¶¶ 5; Exhibit J, Invoice for Freight Services Rendered, at 1); $2,500 for storage of the cheese at the cold storage warehouse (SUMF ¶¶ 16; Mecca Aff., ¶ 8); $2,000

3

for transport of the cheese from California back to New Jersey (SUMF ¶ 14; Mecca Aff., ¶ 6; Exhibit K, Invoice of Delta Freight Logistics Inc.); and $2,600 "for costs associated with return of the rejected cheese" (SUMF ¶ 15; Mecca Aff., ¶ 7; Exhibit L, Invoice dated October 23, 2014).

In November 2014, Plaintiff commenced the instant action. Defendant removed to federal court one month later. As noted, in September 2016 this Court granted Plaintiff partial summary judgment on the issue of liability with respect to its Carmack Amendment claim. In the accompanying opinion, this Court found as a matter of law that the cheese had been delivered to Defendant in good condition and that it was damaged before delivery to its final destination. The only issue remaining before the Court is the amount of damages, on which Plaintiff now moves for summary judgment. Plaintiff contends that its damages include the payment to Singletons and the costs that it incurred in the transportation, storage, and disposal of the cheese after rejection. (Mov. Br. at 4-5.)

## II. LEGAL STANDARD

A moving party is entitled to summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

On a motion for summary judgment, the moving party bears the burden of establishing the basis for its motion and of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the

moving party satisfies this burden, the nonmoving party must show that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). The nonmoving party cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).

**III. DISCUSSION**

In opposition, Defendant argues that "[P]laintiff's submission of its damages was . . . untimely, and thereby inadmissible" for purposes of this motion. (ECF No. 70, Memorandum of Law of Defendant White Arrow, LLC in Opposition to Plaintiff's Motion for Summary Judgment Returnable June 5, 2017 ("Opp'n Br."), at 4.) Defendant also contends that Plaintiff "has no standing to seek recovery" under the Carmack Amendment because Plaintiff was not a shipper of the cheese. (Id.) Because these objections raise what are, in essence, threshold issues, which have the potential to determine either the scope of Plaintiff's recovery or, indeed, whether Plaintiff can recover at all, the Court will address them first. It will then turn to the question of the appropriate measure of damages.

1. *Defendant's Evidentiary Objection*

Defendant contends that the documents on which Plaintiff relies to calculate its damages are "inadmissible into evidence" because they were provided in an untimely manner. (Opp'n Br., at 5.) Defendant appears to be referring to four exhibits: Exhibit I, a wire transfer report for the $73,581.16 that Plaintiff paid to Singletons, along with the accounting table used to calculate that amount; Exhibit J, an invoice for freight services from the Trader Joe's facility to the U.S.

Growers cold storage warehouse; Exhibit K, an invoice for freight services from California back to New Jersey; and Exhibit L, an invoice for $2,600 for what Mr. Mecca described as "costs associated with return of the rejected cheese" (Mecca Aff., ¶ 7).

Defendant asserts that the documents contained in these exhibits were only provided to Defendant in October 2016, several months after the close of discovery. As a result, the documents were not provided "in response to [Defendant's] interrogatories and request for production of documents," or as a supplement to Plaintiff's disclosures under Federal Rule of Procedure 26. (Opp'n Br., at 5-6.) On this basis, Defendant argues that the documents should be stricken from consideration for purposes of this motion.

Federal Rule of Civil Procedure 37 governs sanctions against parties who fail to provide discovery or who fail to provide or supplement information as a part of their Rule 26 disclosures. Wachtel v. Health Net, Inc., 239 F.R.D. 81, 84 (D.N.J. 2006); see Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee, 456 U.S. 694, 707, 102 S. Ct. 2099, 72 L.Ed.2d 492 (1982); Societe Internationale Pour Participations v. Rogers, 357 U.S. 197, 207, 78 S. Ct. 1087, 2 L.Ed.2d 1255 (1958). The Rule allows district courts to exclude evidence offered on a motion if the party relying on that evidence failed to provide the information contained therein in its Rule 26 disclosures, "unless the failure was substantially justified or . . . harmless." Fed. R. Civ. P. 37(c)(1). The Third Circuit has warned, however, that "[t]he exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 791-92 (3d Cir. 1994).

Here, the record before the court indicates that by March 2016, when the deposition of Michael Mecca was taken, Defendant was aware that Plaintiff had made a payment to Singletons

for the price of the cheese and that the rejected cheese was transported from a Trader Joe's facility to a cold storage warehouse, where it was stored. (See ECF No. 68, Exhibit B, Deposition of Michael Mecca ("Mecca Dep."), 74:5-75:7; ECF No. 43-5 Exhibit I, Mecca Dep., 96:2-97:15.) By June 2016, when the parties filed their respective motions for summary judgment, Defendant was also aware of the potential costs that Plaintiff incurred in the storage and disposal of the rejected cheese. (See ECF No. 41-5, Affidavit of Kevin Pederson in Support of Defendant Trader Joe's Company's Motion for Summary Judgment ("Pederson Aff."), ¶ 13; See ECF No. 44-4, Exhibit Q, Letter from Ranga Kidambi to Sharon Smith, dated June 24, 2014.) Finally, by October 2016, more than six months before the instant motion was filed, Defendant received the documents in question. Given these facts, there is no indication that Defendant was either surprised by the existence of these documents or otherwise prejudiced in preparing its opposition to this motion. There is also no evidence suggesting that Plaintiff's failure to provide the documents was due to willful deception or to an attempt to conceal the documents. Therefore, the Court finds that Plaintiff's failure to provide the documents was harmless. Even if that were not the case, there is also no basis for imposing the 'extreme sanction' of exclusion. Accordingly, the Court will refrain from striking exhibits I, J, K, and L from consideration.

2.  *Defendant's Objection to Plaintiff's 'Standing'*

Defendant also argues that Plaintiff "has no standing to seek recovery of its damages" under the Carmack Amendment because Plaintiff is not "entitled to recover under the receipt or bill of lading" for the cheese. (Opp'n Br., at 10-11.) Section 14706(a)(1) of the Carmack Amendment only makes carriers liable to "the person entitled to recover under the receipt or bill of lading." 49 U.S.C. § 14706(a)(1). By this argument, Defendant may mean one of two things,

although it is unclear which one Defendant seeks to assert. One argument is that Plaintiff lacks constitutional standing to maintain this action and, therefore, the Court lacks subject matter over it. A second is that, as merits issue, Plaintiff is simply not entitled to relief under the applicable law, in this case the Carmack Amendment. In either case, the argument is meritless.

First, to establish constitutional standing, a plaintiff must show that he or she suffered an "injury in fact" that is "fairly traceable to the challenged conduct of the defendant" and that is "likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). An injury in fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan, 504 U.S. at 560). Here, the injury of which Plaintiff complains consists of costs that, on Plaintiff's view of the law, it is entitled to recoup. Such financial loss certainly constitutes an injury in fact. That loss is also fairly traceable to Defendant's purported failure to properly refrigerate the cheese, and it is likely to be redressed by a judgment granting damages to Plaintiff. Thus, in principle, Plaintiff's pleadings and the facts of this case establish that Plaintiff has standing.

To be sure, if Plaintiff's construction of the Carmack Amendment were so "implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit," Davis v. Wells Fargo, 824 F.3d 333, 350 (3d Cir. 2016) (quoting Kulick v. Pocono Downs Racing Ass'n, 816 F.2d 895, 899 (3d Cir. 1987) (internal quotation marks omitted), that Plaintiff's claim could not possibly "involve a federal controversy," Id., dismissal for lack of standing might be appropriate. However, the Supreme Court and the Third Circuit have cautioned against drawing such a conclusion, see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89, 118 S. Ct. 1003,

140 L.Ed.2d 210 (1998); Davis, 824 at 348, as doing so might "allow[] a . . . motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits," Davis, 824 F.3d at 348; see Steele Co., 523 U.S. at 89 ("the absence of a valid (as opposed to arguable) cause of action does not implicate subject matter jurisdiction"). Moreover, in the present case, there is no basis for drawing this conclusion anyway. Defendant has failed to cite any precedential opinion or statutory provision that firmly rebuts Plaintiff's contention that it is a "person entitled to recover under the . . . bill[s] of lading," 49 U.S.C. § 14706(a)(1).[2] Defendant has also failed to show that Plaintiff may not be regarded as a "carrier issuing the . . . bill of lading" which seeks to "recover from the carrier over whose line or route the . . . injury occurred the amount required to be paid to the owners of the property," 49 U.S.C. § 14706(b).[3] Therefore, to the extent that Defendant seeks to challenge Plaintiff's standing in this action, the argument fails.

Second, if Defendant instead wishes to raise a merits objection to its potential liability to Plaintiff under the Carmack Amendment, the argument is unavailing for several reasons as well. In the first place, the argument is procedurally untimely. Because it concerns whether Defendant is liable to Plaintiff at all, rather than the amount of damages that Plaintiff incurred, it would constitute a de facto request for reconsideration of the Court's September 16, 2016, order, in which liability under the Carmack Amendment was found. Requests for reconsideration of this

---

[2] For example, even if Plaintiff were not regarded as the shipper of the cheese, Plaintiff's claim could fall within Section 14706(a)(1) under a theory of equitable subrogation. At least one court has reached this conclusion. See REI Transport, Inc. v. C.H. Robinson Worldwide, Inc., 2007 U.S. Dist. LEXIS 18769, 2007 WL 854005 (S.D. Ill. Mar. 16, 2007). Here, the Court dismissed Plaintiff's state law claims after it accepted Defendant's argument that the Carmack Amendment preempted them. Consequently, dismissal of Plaintiff's Carmack Amendment claim, which Defendant now seeks, would leave Plaintiff with no remedy for the monetary payments that it claims to have made as a result of Defendant's conduct. Such a scenario is one to which the doctrine of equitable subrogation might be applicable.

[3] In short, Plaintiff's Carmack Amendment claim may also be regarded as an action for apportionment under 49 U.S.C. § 14706(b), part of the Carmack Amendment, and Defendant has cited no case law or rule that would foreclose this possibility.

sort are governed by Local Civil Rule 7.1(i), which requires that they be made, on motion, within 14 days after entry of the order that the party seeks to challenge. Defendant has not done so.

Furthermore, even ignoring the argument's lack of timeliness, Defendant has failed to establish any adequate ground for reconsideration. Those grounds are limited to the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (quoting N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). Motions for reconsideration may not be used to relitigate old matters or to present evidence or arguments that could have been offered on a prior motion. Id.; NL Indus. v. Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996); Wright, et al, Federal Practice and Procedure § 2810.1 (2d ed 1990).

Here, Defendant's argument cites no change in the controlling law and no newly discovered evidence. Instead, insofar as it challenges Plaintiff's entitlement to relief under the Carmack Amendment, the argument could have been offered in opposition to Plaintiff's prior motion for summary judgment, but was not. Therefore, as Defendant has failed to establish an adequate ground for reconsideration, its argument is without merit.

3.   *Plaintiff's Arguments as to the Amount of Damages*

Having considered Defendant's threshold objections, the Court may now turn to the question of the appropriate measure of damages. Under the Carmack Amendment, "interstate carrier[s] . . . [are] strictly liable for . . . 'the actual loss or injury to the property'" that they receive for transportation. Certain Underwriters at Interest at Lloyd's of London v. UPS of Am., Inc., 762 F.3d 332, 335 (3d Cir. 2014) (quoting 49 U.S.C. § 14706(a)(1)). Ordinarily, the measure of damages is "the difference between the market value of the property in the condition

10

in which it should have arrived . . . and its market value in the condition in which . . . it did arrive." Gulf, C. & S. F. Ry. Co. v. Tex. Packing Co., 244 U.S. 31, 37, 37 S. Ct. 487, 489 (1917). To determine the value of goods in the condition in which they should have arrived, the Third Circuit has relied upon the "invoice price," Paper Magic Group, Inc. v. J. B. Hunt Transp., Inc., 318 F.3d 458, 462 (3d Cir. 2003), or "contract price," Robert Burton Assocs. v. Preston Trucking Co., 149 F.3d 218, 221 (3d Cir. 1998), of the goods. If the damaged goods have been, or could have been, sold for salvage, or resold in a primary or secondary market, that value would be deducted from the invoice price. Paper Magic, 318 F. 3d 458, 461.

The $73,581.16 that Plaintiff paid to Singletons appears to represent the invoice price of the rejected cheese. Although Defendant contests the admissibility of the exhibits on which Plaintiff relies to establish this amount, Defendant does not appear to contest that amount itself. More to the point, Defendant has failed to come forward with any evidence that would create a genuine issue of material fact as to this question. From that amount, no salvage value can or need be deducted, as the rejected cheese was worthless. The cheese appears to have been destroyed because of its prolonged exposure to unsafe temperatures, and, given its intended purpose for human consumption, a trier of fact could reasonably conclude that it was worthless. Defendant has cited no evidence on this motion from which a fact-finder could reasonably draw an opposing conclusion. Therefore, the Court finds that Plaintiff's damages include the $73,581.16 that it paid to Singletons for the price of the cheese.

In addition to this amount, Plaintiff seeks to recover costs that it incurred in the transportation, storage, and destruction of the cheese after rejection. Although the language of the Carmack Amendment appears to refer only to injuries sustained by the property itself, as the Supreme Court has noted, "[t]he words of the statute are comprehensive enough to embrace all

11

damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." Se. Express Co. v. Pastime Amusement Co., 299 U.S. 28, 29, 57 S. Ct. 73, 74, 81 L.Ed. 20, 21 (1936) (internal quotation marks and citations omitted). Accordingly, courts have held that incidental damages arising from a non-delivery or rejection of goods are recoverable under the Carmack Amendment. See Caspe v. Aaacon Auto Transp., Inc., 658 F.2d 613, 616-17 (8th Cir. 1981); Am. Nat'l Fire Ins. Co. v. Yellow Freight Sys., 325 F.3d 924, 931 (7th Cir. 2003); Air Prods. & Chems., Inc. v. Ill. C. G. R. Co., 721 F.2d 483, 485 (5th Cir. 1983). The only limitation is that, following the common law rule, such damages must be "foreseeable to a reasonable [person]" at the time of contracting. Paper Magic, 318 F.3d at 461 (quoting Hector Martinez & Co. v. S. Pac. Transp. Co., 606 F.2d 106, 109 (5th Cir. 1979)) (internal quotation marks omitted). If, on the other hand, a plaintiff seeks to obtain so-called 'special' damages, the plaintiff must have "notified the carrier that the goods required special handing of some kind, thereby giving the carrier notice and making the damages foreseeable." Paper Magic, 318 F.3d at 462.

In the present matter, given the type of goods shipped, their intended purpose for human consumption, and the need to refrigerate them to keep them safe, it was clearly foreseeable that, upon rejection, Trader Joe's, Singletons, or Plaintiff would have had to determine whether the cheese could be salvaged at all. It was also foreseeable that, during that period of time, the cheese would have to be transported to a cold storage facility and stored there. Finally, it was also foreseeable that the cheese would have to be destroyed if it were unsafe for resale. Thus, none of the damages that Plaintiff seeks are, properly speaking, 'special' damages. Instead, they are the type of general damages to which Plaintiff is entitled as a remedy for its full actual loss.

Plaintiff's proofs establish that the amount of damages that it incurred with respect to these losses may be reasonably calculated. In total, that amount equals $7,600.00. Defendant, for its part, does not appear to contest that Plaintiff incurred these costs and has pointed to no evidence that would create a genuine, disputed issue as to this fact.[4] Therefore, the Court finds that Plaintiff is entitled to damages equaling $7,600.00 as well.

IV.     CONCLUSION

Accordingly, for the foregoing reasons, Plaintiff's motion for partial summary judgment, pursuant to Fed. R. Civ. P. 56, is GRANTED. An appropriate order shall issue.

   /s Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: September 11, 2017

---

[4] With regard to these costs, Defendant's objections were confined to the admissibility of the evidence on which Plaintiff relied and whether Plaintiff's costs for transportation, storage, and destruction of the cheese after rejection constituted 'special' damages. Both of these objections have been addressed in the foregoing.